UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JETAUN HUNLEY,
ON BEHALF OF DH,

                        Plaintiff,

    v.                                        **DECISION AND ORDER**
                                                      04-CV-678S

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

    1.      Plaintiff challenges an Administrative Law Judge's ("ALJ") decision that her minor son, DH, is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that DH has been disabled due to a learning disability since September 1, 1995, and is therefore entitled to payment of Supplemental Security Income ("SSI") under the Act.

    2.      Plaintiff filed the instant application for SSI benefits on behalf of DH on August 20, 2002. Her application was denied. On March 23, 2004, Plaintiff and DH appeared with counsel before Administrative Law Judge ("ALJ") Karl Alexander for a hearing. The ALJ considered the case *de novo*, and on April 14, 2004, issued a decision denying Plaintiff's application for SSI. On June 24, 2004, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on August 20, 2004, challenging Defendant's final decision.[1]

    3.      On April 14, 2005, Defendant filed a Motion for Judgment on the Pleadings

---

[1] The ALJ's April 14, 2004 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff has failed to file a response to Defendant's Motion as directed by this Court on November 4, 2005, and December 9, 2005. For the reasons set forth below, Defendant's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity and Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits. See 42 U.S.C. § 1382c. In relevant part, the 1996 Act provides that an "individual under the age of 18 shall be considered disabled . . . if [he or she] has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i).

7. The regulations promulgated by the Social Security Administration ("SSA") define "marked and severe functional limitations" in terms of "listing-level severity," *i.e.*, an impairment that meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.926a(a). In accordance with the regulations, a child's functional limitations are evaluated in six broad areas or domains of functioning: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. See 20 C.F.R. § 416.926a(b).

8. The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. See 20 C.F.R. § 416.924. Specifically, the child must demonstrate that: (1) he or she is not working; (2) he or she has a "severe" impairment or combination of impairments; and (3) his or her

impairment or combination of impairments is of listing-level severity, in that it meets, medically equals, or functionally equals the severity of a listed impairment. See 20 C.F.R. § 416.924. A child's medically determinable impairment or combination of impairments "functionally equals" a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. See 20 C.F.R. § 416.926a.

9.  Applying the sequential evaluation in the instant case, the ALJ found first that Plaintiff had not engaged in any substantial gainful activity since the alleged onset of his disability, September 1, 1995. (R. at 13, 21).[2]  Second, the ALJ concluded that DH had attention deficit hyperactivity disorder, conduct disorder, and borderline intellectual functioning, which constitute severe impairments under the Act. (R. at 13, 21). Third, he determined that Plaintiff's impairments did not meet or medically equal any listed impairments. (R. at 14, 21). In addition, the ALJ evaluated DH's mental impairments to determine if they were "functionally equivalent" to a listed impairment. (R. at 17-21). The ALJ noted that the evidence revealed a single "marked" limitation in the domain of attending and completing tasks, and therefore concluded that his impairments were not functionally equal to a listed impairment. (R. at 17-21). Based on the record, the ALJ ultimately determined that Plaintiff was not under a disability, as defined by the Act, at any time from the alleged onset of his disability, September 1, 1995, through the date of his decision, April 14, 2004. (R. at 21).

10.  This Court finds that substantial evidence supports the ALJ's decision that DH was not disabled. A review of the administrative record reveals no evidence that DH exhibited marked inattention, impulsiveness or hyperactivity. To the contrary, a mental

---

[2] Citations to the underlying administrative record are designated as "R."

status examination conducted by Charles D. Pierson, Ph.D., in October 2002, showed that DH's attention and concentration were intact and age appropriate. (R. at 152). Dr. Pierson concluded that while DH did "have some cognitive limitations, there [was] no evidence" of a learning disorder. (R. at 153). In February 2001, David S. Nathanson, Ph.D., a school psychologist, reported that DH displayed "[n]o significant opposition, hyperactive or inattentive behaviors." (R. at 145). Testing by Dr. Nathanson revealed that DH was functioning in the average to low average range. (R. at 145-47). Dr. Nathanson noted that DH was "achieving a rate consistent with measured intelligence in Reading and Math, with [his] Writing achievement measure being deflated by sloppy work habits and poor motivation." (R. at 148).

DH's school records demonstrate that DH was able to work well and complete tasks with one-on-one attention (R. at 74, 86, 88-89, 134) and to complete assignments independently once he "gets going." (R. at 91). DH's Special Education teacher, Ms. Ann Braniecki, noted that DH "reads well, speaks well, but [was] not motivated to work." (R. at 86). DH's Ninth Grade Biology teacher reported that DH could do "excellent work," but "when he is in class he goofs around too much."[3] (R. at 133-34). This same teacher concluded that DH "can learn and acquire information but he thinks he is on stage all the time . . . . He needs to learn how to control himself first, then his education can progress." (R. at 140). Plaintiff testified at the hearing that DH was able to concentrate on activities that he enjoyed, such as playing video games. (R. at 179).

The State Agency physician, Dr. Jennifer Meyer, concluded that while DH's impairments were severe, they did not meet or medically equal any listed impairment. (R.

---

[3] This teacher's signature is illegible. (R. at 140) As such, this Court cannot identify him by name, only by his relationship to DH.

at 162). State Agency medical consultants are highly qualified experts in the evaluations of disability issues under the Act. See 20 C.F.R. § 416.927(f); SSR 96-6p. Under certain circumstances, the opinions of a State Agency medical consultant may be entitled to greater weight than the opinion of a treating or examining physician. See Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993); Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995).

With respect to interacting and relating with others, DH's mental status examination revealed that DH's social skills were age appropriate. (R. at 151). DH's teachers reported that he had no problems interacting and relating to others. (R. at 82, 136). DH's Individualized Education Program report for the 2001-2002 school year stated that DH got along well with his peers, although he was easily distracted by them. (R. at 91). DH's Special Education teacher Ms. Braniecki reported that DH was "very personable - can't help liking him." (R. at 76).[4]

There is also no evidence in the record which suggests that DH was limited in his ability to move and manipulate things or care for himself, or that he suffered from health problems of a physical nature. For example, none of DH's teachers reported that he had any limitations in the domain of moving about or manipulating objects. (R. at 83, 109, 137). Plaintiff reported in August 2002 that DH had no problems caring for himself. (R. at 58). Moreover, she advised the consultative examiner in October 2002, that DH was able to dress, bathe and groom himself, and that he assisted with household chores such as cleaning his room and vacuuming. (R. at 152, 158). Lastly, Plaintiff testified that DH has

---

[4]Ms. Braniecki also reported that DH often came to school with no work, no pens, no pencils and no calculator and slept in class on a daily basis. (R. at 76). As the ALJ noted in his decision, DH's school record was marked by excessive absenteeism. (R. at 16). Moreover, the ALJ acknowledged, DH often slept in class and came to school "too tired to work." (R. at 16).

no health problems. (R. at 182). This positive physical assessment is confirmed by DH's teachers and the State Agency physician, who reported that he had no known limitations in the domain of health and physical well-being. (R. at 85, 139, 166). Based on the record, this Court finds that it was reasonable for the ALJ to conclude that DH's single marked limitation did not meet, medically equal, or functionally equal a listed impairment, and that he was not disabled.

      11.    Having reviewed the administrative record, this Court finds that substantial evidence supports the ALJ's determination that DH is not disabled. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings.

      IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

      FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

      SO ORDERED.

Dated:   March 27, 2006
           Buffalo, New York

                                                  /s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                  United States District Judge